## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
## SOUTHERN DIVISION

CALEB SKINNER and
ERIKA SKINNER, individual
residents of Kansas,

        Plaintiffs,

v.

ESTER LEAL,
d/b/a C&L USED CARS,

    *Serve at:*
    *1421 Battery Drive,*
    *Prairie Grove, AR 72753*

CARLOS OMAR LEAL,
a/k/a OMAR SALES, an individual
Arkansas resident

    *Serve at:*
    *202 E. Pridemore Dr.*
    *Lincoln, AR 72744*

MELINDA HARRISON,
d/b/a AR CAR TITLE WORKS,

    *Serve at:*
    *1400 W. Walnut Street, #121*
    *Rogers, AR 72756*

XTREME DIESEL, LLC,
 A Missouri Limited Liability Company,

    *Serve at:*
    *Registered Agent: Matthew Frye*
    *32 State Road F*
    *Buffalo, MO 65622*

Case No. _____

**<u>JURY TRIAL DEMANDED</u>**

MAKAYLA FRYE, a/k/a MAKAYLA
KELLY, an individual
Missouri resident,

> *Serve at:*
> *1814 US HWY 65*
> *Buffalo, MO 65622*

JOHN FRYE, an individual Missouri
resident,

> *Serve at:*
> *40 Mustang Drive*
> *Buffalo, MO 65622*

MATTHEW FRYE, an individual
Missouri resident

> *Serve at:*
> *1814 US HWY 65*
> *Buffalo, MO 65622*

Defendants.

## COMPLAINT

For their Complaint, Plaintiffs Caleb Skinner and Erika Skinner state, allege and
aver as follows:

## SUMMARY OF CASE

One or all of the Defendants were involved in an odometer rollback scheme and/or
participating in making false mileage statements regarding a truck sold to Plaintiffs
Skinner. Investigation has revealed that individuals and entities involved in the chain of
title for the truck misrepresented (intentionally and/or negligently) to Plaintiffs that the

2

truck had approximately 100,000 miles, when its actual mileage was over 200,000 miles, thereby violating federal and state law.

## JURISDICTION

1.      Jurisdiction is vested in this Court pursuant to the federal odometer law, 49 U.S.C. §32701, the federal Magnuson-Moss Warranty Act, 15 U.S.C. §2310 (due to more than $50,000 in controversy including actual and punitive damages), 28 U.S.C. §1331, diversity under 28 U.S.C. §1332 (due to more than $75,000 in controversy) and supplemental jurisdiction under 28 U.S.C. §1367 for Plaintiffs' Missouri common law and statutory claims.

## ALLEGATIONS COMMON TO ALL COUNTS

2.      Plaintiffs Caleb Skinner and Erika Skinner ("Plaintiffs Skinner") are individuals and residents of the State of Kansas.

3.      Defendant Ester Leal d/b/a C&L Used Cars ("C&L") is an Arkansas licensed used car dealer. Upon information and belief, C&L is an experienced and sophisticated used motor vehicle dealership that has over $2 million in annual sales revenue and has been in business for over 20 years. Its principal place of business is located at 202 E. Pridemore Drive, Lincoln, Washington County, Arkansas 72744 and can be served at the 1421 Battery Drive, Prairie Grove, AR 72753.

4.      Defendant Carlos Omar Leal, a/k/a Omar Sales ("Sales") is an individual who is a resident of the State of Arkansas. He was at all relevant times an agent and/or employee of C&L, acting within the course and scope of his agency on behalf of

Defendant C&L, therefore Defendant C&L is vicariously liable for Defendant Sales acts and omissions.

5.      Defendant Melinda Harrison, d/b/a AR Car Title Works ("AR Car Title Works") is an Arkansas Title Agent, No. AR 9072 85515. At all relevant times, it was acting as an agent of C&L, within the course and scope of its agency. As a title agent, Defendant AR Car Title Works works directly with the Arkansas Department of Finance, Motor Vehicle Division Central Revenue and in conjunction with the Arkansas State Police to assist clients such as Defendant C&L with vehicle titles and title-related issues.

6.      Defendant Xtreme Diesel, LLC ("Xtreme") is a Missouri Limited Liability Company engaged in the sale of used motor vehicles with its principal place of business located at 939 W. Dallas Street, Buffalo, Dallas County, Missouri 65622. Its registered agent is Matthew Frye who can be served at 32 State Road F, Buffalo, Dallas County, Missouri 65622.

7.      Upon information and belief, Defendant Makayla Frye a/k/a Makayla Kelly ("Makayla Frye") is an individual resident of Missouri and holds the Missouri motor vehicle dealer license for Defendant Xtreme. Upon information and belief, she is an agent and/or employee of Defendant Xtreme and was acting at all relevant times within the course and scope of her agency. Upon information and belief, she was also acting in a supervisory or managerial role with Defendant Xtreme. Upon further information and belief, she is married to Defendant Matthew Frye. She can be served at 1814 US Highway 65, Buffalo, Dallas County, Missouri 65622 or at Defendant Xtreme's business location.

8. Defendant John Frye is an individual and resident of Missouri. He is an agent and/or employee of Defendant Xtreme and was acting at all relevant times within the course and scope of his agency with Defendant Xtreme. He can be served at 40 Mustang Drive, Buffalo, Dallas County, Missouri, 65622 or at Defendant Xtreme's business location.

9. Defendant Matthew Frye is an individual and resident of Missouri. Upon information and belief, he is an agent and/or employee of Defendant Xtreme and was at all relevant times acting within the course and scope of his agency with Defendant Xtreme. Upon information and belief, he was also acting in a supervisory or managerial role with Defendant Xtreme with the ability to control other agents and employees, including but not limited to, Defendants Makayla Frye and John Frye, as well as the content of vehicle ad postings by Defendant Xtreme. Upon information and belief, Defendant Matthew Frye knew, or should have known, about the Dodge Truck, its mileage discrepancy, its true mechanical condition and approved of Xtreme's and Defendants Makayla Frye and John Frye's representations regarding the Dodge Truck prior to the truck's sale to Plaintiffs Skinner. Defendant Matthew Frye can be served at 1814 US Highway 65, Buffalo, Dallas County, Missouri 65622 or at Defendant Xtreme's business location.

## DEFENDANT XTREME'S SALE OF THE DODGE TRUCK TO PLAINTIFFS SKINNER

10. On or about August 22, 2024, Plaintiffs Skinner saw a Facebook Marketplace ad placed by Defendant Xtreme offering for sale a 2011 Dodge Ram Mega

5

Cab Laramie Long Horn Edition 4-wheel drive diesel pickup, VIN

3D73Y4HL4BG535493 ("the Dodge Truck").

11.     Defendant Xtreme's asking price was $30,000.

12.     Defendant Xtreme's ad touted the Dodge Truck as a "one owner"; "clean title"; "no mechanical defects"; "no rust"; "minor body flaws" and "105,245 miles".

13.     Plaintiffs Skinner were looking for a truck to haul material and pull a trailer.

14.     Plaintiff Caleb Skinner used his wife, Plaintiffs Erika Skinner's Facebook account to message Defendant Xtreme, seeking to verify the information by asking for the following: 1) "When are you available to show?"; 2) "Is there any mechanical issues?"; 3) "Is it clean or salvage title?"; and 4) "Any rust or bubbling of paint?" True and correct copies of these messages are attached hereto, marked as Exhibit A and incorporated herein by reference.

15.     Defendant John Frye, on behalf of Defendant Xtreme replied: "Please read ad. And you can come by anytime if you have cash." "Everything is listed in ad. States no rust. Clean title. No issues." (Exhibit A, p. 1-2).

16.     Plaintiff Caleb Skinner responded: "Great, are you able to meet tomorrow morning sometime? To show". (Exhibit A, p. 2).

17.     Defendant John Frye stated: "Yes, as long as you guys have cash". Defendant John Frye then sent a short video of the Dodge Truck and the first page only of a CARFAX Report on the Dodge Truck, but no other information. (Ex. A, p. 2-4.)

6

18.     On or about August 23, 2024, Plaintiff Caleb Skinner traveled 3 to 4 hours from his home in Kansas with his stepbrother to Defendant Xtreme's business location in Buffalo, Dallas County, Missouri to look at the Dodge Truck and possibly buy it.

19.     Upon arrival at Xtreme, Plaintiff Caleb Skinner met with Defendant John Frye. Plaintiff Caleb Skinner performed a walk-around inspection and looked at the underbody. He confirmed that there were no signs of leakage underneath the truck at that time.

20.     Plaintiff Caleb Skinner then took the Dodge Truck on a test drive with Defendant John Frye as a passenger. During the test drive, the Dodge Truck populated an engine code on the dash. Plaintiff Caleb Skinner, with Defendant John Frye's permission, used a device he brought along with him to check the engine code. It was determined that the engine code was a "high pressure fuel fault".

21.     Plaintiff Caleb Skinner was able to clear the fault code. He then took the Dodge Truck for another test drive and no engine codes reappeared during the test drive.

22.     Reasonably relying upon Defendant Xtreme's representations, Plaintiff Caleb Skinner agreed on behalf of himself and his wife, Plaintiff Ericka Skinner, to purchase the Dodge Truck for a personal, family or household use from Defendant Xtreme for $29,500. He paid with a $27,000 cashier's check and $2500 in cash.

23.     At the time of the purchase, Defendant Xtreme provided Plaintiff Caleb Skinner with a Missouri Bill of Sale, a Missouri Motor Vehicle Inspection Approval Notice, and an Application for Missouri Title and License. The Inspection and Application for Title each listed the odometer mileage for the Dodge Truck as 105,291

7

miles. True and correct copies of the Inspection and Application for Title are attached hereto, marked as Exhibit B and incorporated herein by reference.

24.     Defendant Xtreme also provided Plaintiff Caleb Skinner with a State of Arkansas Certificate of Title for the Dodge Truck ("the Arkansas Title"). The front side of the Arkansas Title shows: 1) the owner as [Defendant] C&L Used Cars in Lincoln Arkansas: 2) as a "REPO" title; 3) an issuance date of March 21, 2024; 4) that the Dodge Truck's odometer reading was "99,897" [miles]; and 5) "OD Actual". A true and correct copy of the Arkansas Title is attached hereto, marked as Exhibit C and incorporated herein by reference.

## DEFENDANT C&L'S SALE OF THE DODGE TRUCK TO DEFENDANT XTREME

25.     In the Title Assignment By Owner(s) section entitled "Title Assignment and Odometer Disclosure" on the reverse side of the Arkansas Title (Exhibit C, p. 2), it shows Defendant C&L as the Seller and Defendant Xtreme as the Buyer of the Dodge Truck on August 15, 2024.

26.     In this same section of the Arkansas Title, Defendant C&L listed the Dodge Truck's odometer reading in a box as "105,245". A representative of Defendant C&L then signed as Seller below the following statement: "I certify that to the best of my knowledge that the odometer reading provided in the box below is the actual mileage of the vehicle unless one of the following statements is checked:

8

EXCEEDS MECHANICAL LIMITS. The mileage stated is in excess of the odometer's mechanical limits.

Or

WARNING-ODOMETER DISCREPANCY the odometer is not the actual mileage."

Neither statement was checked by Defendant C&L. (Exhibit C, p. 2).

27.    In that same section, Defendant Xtreme, as the Buyer, signed below the following statement: "I am aware of the above odometer certification made by the seller." (Exhibit C, p. 2).

28.    In the next section entitled: "First Dealer Reassignment", the Buyers are listed as Plaintiffs Skinner and the Dealer is listed as Defendant Xtreme. (Exhibit C, p. 2). Defendant Xtreme listed the Dodge Truck's odometer reading in a box as "105,291". Defendant Makayla Frye as a representative of Defendant Xtreme then signed "M Kelly" for Dealer (Defendant Xtreme) below the following statement: "I certify that to the best of my knowledge that the odometer reading provided in the box below is the actual mileage of the vehicle unless one of the following statements is checked:

EXCEEDS MECHANICAL LIMITS. The mileage stated is in excess of the odometer's mechanical limits.

Or

WARNING-ODOMETER DISCREPANCY the odometer is not the actual mileage."

Neither statement was checked by Defendant Xtreme. (Exhibit C, p. 2).

29. The same section lists August 23, 2024, as the sale date and confirmed the sales price of $29,500 paid by Plaintiffs Skinner to Defendant Xtreme. (Exhibit C, p. 2).

## AFTER DEFENDANT XTREME'S SALE OF THE DODGE TRUCK TO PLAINTIFFS SKINNER

30. Plaintiff Caleb Skinner returned to his home in Kansas. While cleaning the truck, he removed the steering wheel cover to replace it and found that the steering wheel had an unusual amount of wear on it. He also noticed a lot of paint defects he did not originally discover when buying the Dodge Truck and determined that it had oil leaking from the front engine timing cover that would require a significant repair. No one on behalf of Defendant Xtreme ever disclosed any of these issues to Plaintiffs Skinner.

31. On August 25, 2024, Plaintiff Caleb Skinner reached out to Defendant Xtreme via Defendant John Frye and requested a full copy of the CARFAX on the Dodge Truck be sent to his email address, so that he could see if the Dodge Truck had ever been in an accident. Defendant John Frye, on behalf of Defendant Xtreme, acted as if he would send the complete CARFAX but failed to do so.

## ORIGINAL DODGE TRUCK OWNER'S SALE TO DEFENDANT C&L

32. Becoming more suspicious about the Dodge Truck, Plaintiff Caleb Skinner found a home location in Tecumseh, Kansas in the Dodge Truck's stereo GPS that was listed as the "home" address. Plaintiff Caleb Skinner then looked up that address online and determined that it belonged to Chris Dittman ("Dittman"). Plaintiff Skinner looked up Dittman on Facebook and obtained his phone number.

33.     Plaintiff Caleb Skinner then called Dittman and confirmed that he was the original owner of the Dodge Truck. Dittman stated he sold the Dodge Truck to a man named "Omar" from Arkansas on March 19, 2024. Dittman told Plaintiff Skinner he recalled selling the Dodge Truck with around 199,000 miles.

34.     Dittman said he sold the Dodge Truck with a leaking water pump and archived his Facebook messenger conversation with "Omar" about the truck. A true and correct copy of the messages provided by Dittman to Plaintiff Caleb Skinner are attached as Exhibit D and incorporated herein by reference.

35.     On March 19, 2024, "Omar" messaged Dittman about the leaking water pump and how he had to put four gallons of water in the Dodge Truck on his way back to Arkansas after buying the truck from Dittman. (Exhibit D, p. 1).

36.     "Omar" specifically messaged Dittman that the Dodge Truck engine temperature got up to 222 degrees on the way home. But to show Dittman the temperature went down to 183 degrees after adding the water, "Omar" sent a photograph of the Dodge Truck's electronic dash gauges. (Exhibit D, p. 2).

37.     More importantly, the photograph referenced in the preceding paragraph that "Omar" sent to Dittman shows that the actual mileage of the Dodge Truck *on March 19, 2024, to be 203,344 miles*. (Exhibit D, p. 4). A copy of this photograph is shown below:



38.     On March 20, 2024, "Omar" messaged Dittman again attaching a picture of the Dodge Truck sitting in a shop with its hood open. "Omar" stated: "Brand new water pump, and oil change! Off to Texas it goes!" (Exhibit D, p. 3). This last statement alone shows that "Omar" (and Defendant C&L as referenced below) knew that the Dodge Truck would be sold in interstate commerce to other motor vehicle dealers or consumers.

39.     After receiving copies of the messages between Dittman and "Omar", Plaintiff Caleb Skinner searched "Omar" on Facebook in the Lincoln, Arkansas area, based on the address for Defendant C&L in the Lincoln, Arkansas area.

40.     Plaintiff Caleb Skinner found Omar's profile which listed his name as "Omar Sales", whose legal name is Carlos Omar Leal, one of the Defendants named in this Complaint.[1] Defendant Sales's profile photograph confirmed that Defendant Sales is the individual that was messaging with Dittman on March 19-20, 2024. Defendant Sales's profile also confirmed that he was working for Defendant C&L at that time. Finally, the

_____

[1] During their investigation, Plaintiffs' counsel discovered that "Omar Sales" is an online alias used by Defendant Carlos Omar Leal.

profile shows that Defendant Sales posted another picture of the Dodge Truck and reported it as being sold on August 15, 2024 – the date Defendant C&L sold the Dodge Truck to Defendant Xtreme as supported by the Arkansas Title referred to above. (Exhibit C, p. 2).

## PLAINTIFFS SKINNER'S REQUEST FOR REFUND FROM DEFENDANT XTREME AND FOLLOW-UP INVESTIGATION ON THE DODGE TRUCK

41.     Upon learning some of this information, on August 28, 2024, Plaintiff Caleb Skinner sent the messages and photographs to Defendant Xtreme via Defendant John Frye and reported the odometer discrepancy requesting Defendant Xtreme discuss the situation over the phone.

42.     Defendant John Frye messaged Plaintiff Caleb Skinner back and sent Skinner a copy of a message he allegedly sent to Defendant C&L with the information supplied by Skinner. Defendant John Frye then messaged Skinner: "I am sorry this has happened."

43.     On September 3, 2024, Plaintiff Caleb Skinner messaged Defendant John Frye again and stated: "Good afternoon John, Hope you had a good Labor Day. Looking to see where we are with moving forward on the truck odometer rollback. What is the next steps? Let me know, thank you!". Defendant John Frye responded: "Yeah I haven't heard from him. Tried calling multiple times and nothing so I don't know." A true and correct copy of these messages are attached hereto as Exhibit E and incorporated herein by reference.

13

44.     Plaintiff Caleb Skinner then asked Defendant John Frye if he was "going to offer any solutions?". Defendant John Frye told Skinner: "After you send the title off, you can bring it back to me and I will try and resell it for you. And we would have to tell people about the odometer disclosure". (Exhibit E, p. 7-8).

45.     Plaintiff Caleb Skinner indicated that Defendant John Frye's "offer was not a solution" and that his (Skinner's) most preferred solution was return of the truck and full return of his money from Defendant Xtreme. Plaintiff Skinner also indicated that if he did not hear back from Defendant John Frye, he (Skinner) would "keep moving toward resolution". (Exhibit E, p. 9).

46.     Plaintiff Caleb Skinner heard nothing meaningful back regarding resolution from Defendant Xtreme or its agents, Defendant John Frye, Defendant Makayla Frye, or Defendant Matthew Frye.

47.     On or about October 24, 2024, Plaintiff Caleb Skinner obtained his own copy of a six-page CARFAX report on the Dodge Truck. The first page of the CARFAX indicated 105,245 [miles] as "Last reported odometer reading". But page 3 of the CARFAX showed on September 18, 2013, the Dodge Truck had an odometer reading of 99,769 miles. A true and correct copy of the CARFAX report is attached as Exhibit F and incorporated herein by reference.

48.     Thus, the CARFAX shows that nearly 11 years *before* the Dodge Truck was sold by Dittman to Defendant Sales and Defendant C&L, as well as nearly 11 years *before* it was sold by Defendant Xtreme Diesel to Plaintiffs Skinner, the Dodge Truck had nearly 100,000 miles on it.

## THE DODGE TRUCK'S ARKANSAS TITLE HISTORY

49.     Further title history on the Dodge Truck was obtained from the Arkansas Department of Finance and Administration ("the Arkansas Title History"). A true and correct copy of those records are attached as Exhibit G and incorporated herein by reference.

50.     The Arkansas Title History shows the following:

a) Defendant AR Car Title Works submitted a request for a repossession title to the State of Arkansas pursuant to a "Power of Attorney for Vehicle Transactions" signed on behalf of Defendant C&L;

b) The submission by Defendant AR Car Title Works contained an Experian Auto Check Report dated March 20, 2024, which shows the last odometer report for the Dodge Truck as 99,769 miles on September 17, 2013;

c) The submission contains a "Security Agreement" dated January 22, 2024, in favor of Defendant C&L allegedly signed by Humberto Gomez listing the Dodge Truck as security for an alleged note for $10,000 payable in $1,000 per month payments at zero percent interest;[2]

d) The submission contains a form called "State of Consideration Paid: Odometer Disclosure Statement for a Vehicle Subject to Registration" signed by a representative of Defendant C&L stating that on March 20,

---

[2] The Security Agreement is dated two months **before** Defendant C&L purchased the Dodge Truck from Dewitt. In addition, Plaintiffs have learned that Humberto Gomez is a relative of Defendant Carlos Omar Leal and was at all relevant times an agent or employee of Defendant C&L.

2024, the Dodge Truck Odometer read 99,897 miles. The form specifically states: "FEDERAL AND STATE LAW REQUIRES THAT YOU STATE THE MILEAGE UPON TRANSFER OF OWNERSHIP. FAILURE TO COMPLETE OR PROVIDING A FALSE STATEMENT MAY RESULT IN FINES AND/OR IMPRISONMENT." (Emphasis in original);

e) Defendant AR Car Title Works' submission contains an "Affidavit of Location of Repossessed Vehicle" listing Defendant C&L's business location as the location of the Dodge Truck signed by a Defendant C&L representative on March 20, 2024;

f) The submission contains a "RUSH-HOLD VEHICLE REGISTRATION APPLICATION, Transaction Type REPO" for the Dodge Truck with the owner listed as Defendant C&L and that the title was to be mailed to Defendant AR Car Title Works; and

g) A fee sheet from the State of Arkansas listing actual odometer reading as 99,897 miles and Defendant C&L as the owner.

(Exhibit G).

51.     Thus, Defendants C&L, Defendant Sales and possibly others conspired to commit an elaborate title laundering scheme to conceal that Defendant C&L and Defendant Sales illegally rolled back the odometer on the Dodge Truck from its original reading of over 200,000 miles to 99,897 miles. Upon information and belief, Defendant Sales either personally rolled back the Dodge Truck's odometer, or directed someone else

to do so, while the Dodge Truck was in his (and Defendant C&L's) custody or under their control.

52.     For the ease of the Court and the parties, the chart below summarizes the chronology of events evidenced by the documents and facts uncovered by Plaintiffs Skinner:

| State | Buyer | Seller | Mileage | Purchase Date | Title Issue Date | Event Description: |
|-------|-------|--------|---------|---------------|------------------|--------------------|
| KS | Chris Dewitt | New Century Dodge | 000001 | 2/9/11 | 11/15/11 | Original new car sale |
| AR | Humberto Gomez | C&L Used Cars | ? | 1/22/24 *Lien date | None | Security agreement attached to App. For Repo Title. |
| KS | C&L Used Cars / Omar Sales | Chris Dewitt | 200,344 Actual Odometer Reading | 3/19/24 | None | Second "sale" |
| AR | C&L Used Cars *Affidavit of Repossession | Repossession from Humberto Gomez | *Odometer Statement 99,897 | 3/20/24 | 3/21/24 Repossession Title | Application for Repossession title |
| MO | Caleb & Erika Skinner | Xtreme Diesel, LLC | 105,291 on title | 8/23/24 | None to date, due to fraud. | Third sale |

53.     Defendant C&L and/or Defendant Sales knew when the Dodge Truck was sold to Defendant Xtreme that Defendant Xtreme was a Missouri motor vehicle dealership that would resell the Dodge Truck to consumers in Missouri. Defendants C&L and Sales used the mail, phone, texts and other interstate means to facilitate the sale and delivery of the Dodge Truck to Defendant Xtreme in Missouri.

54.     To complete the sale and transfer of ownership of the Dodge Truck to Defendant Xtreme, Defendant C&L certified on the back of the Arkansas Title in the

section entitled: "Title Assignment by Owner(s)" that to the best of its knowledge the odometer reading of 105,245 was the Dodge Truck's "actual mileage".

55.    Defendant C&L did not check the box that would have warned Defendant Xtreme and Plaintiffs Skinner that there was an odometer discrepancy and that the odometer reading was not part of the Dodge Truck's actual mileage, even though it knew that the Dodge Truck's mileage was substantially more than 105,245 miles.

56.    In all actions and omissions concerning the Dodge Truck, Defendants C&L and/or Sales knew that the representations about the Dodge Truck were false or acted with reckless disregard as to whether they were true or false. Every representation, act or omission was done with the intent that Plaintiffs Skinner and others would rely on it in deciding to purchase the Dodge Truck or to take or refrain from taking action with respect to the Dodge Truck and was done with the intent to defraud. Defendants C&L and/or Sales had superior knowledge of the ownership history of the Dodge Truck when compared with the knowledge of Plaintiffs Skinner and that knowledge was not within the fair and reasonable reach of Plaintiffs Skinner.

57.    Under the Restatement (Second) Torts §533(1977), "the maker of a fraudulent representation is liable to an individual when the maker has reason to expect that [the misrepresentation's] terms will be repeated or its substance communicated to the other." *Pelster v. Ray*, 987 F.2d 514, 523 (8th Cir. 1993).

58.    Here, Defendants C&L and Sales knew, or should have known, that representations about the Dodge Truck's odometer reading, title history and condition would be repeated to downstream consumers in Missouri, like Plaintiffs Skinner.

18

59.     The conduct of Defendant C&L and/or Defendant Sales was pursuant to a pattern and practice whereby numerous vehicles were sold pursuant to misrepresentations of mileage, history and condition.

60.     Federal odometer law imposes an affirmative duty on automobile dealers to discover mileage defects.

61.     Under Federal odometer law, transferees like Plaintiffs Skinner can prove intent to defraud by showing that a transferor like dealer Defendant C&L and dealer Defendant Xtreme had actual knowledge, exhibited gross negligence or reckless disregard for the truth in preparing odometer disclosure statements or lacked actual knowledge of a false odometer reading by "closing their eyes to the truth."

62.     Plaintiffs Skinner suffered damages as a proximate result of the conduct of the Defendants as alleged herein, including but not limited to the lessened value of the Dodge Truck because of the higher actual mileage, the cost of repairs and the expenditure of repair labor on the truck, insurance, inconvenience and labor expended in investigating and coping with problems relating to the Dodge Truck, loss of use of the truck and other incidental and consequential damages.

## COUNT I – DEFENDANT C&L AND DEFENDANT SALES – VIOLATION OF FEDERAL ODOMETER LAW

63.     Plaintiffs Skinner restate and reallege paragraphs 1 – 62 above as though each were fully set forth herein.

64.     Defendant C&L's and/or Defendant Sales's conduct in rolling back the Dodge Truck's odometer, in making and participating in false mileage statements

19

concerning the Dodge Truck and in conspiring with others to roll back the odometer and sell the Dodge Truck pursuant to false mileage representations, constituted violations of 49 U.S.C. §§32703 and 32705 and regulations for the enforcement of the federal odometer statutes at 49 C.F.R. §580.1 *et. seq.*[3]

65.     As a proximate result of these violations of law, Plaintiffs Skinner suffered actual damages in excess of $30,000 as alleged above.

66.     The conduct of Defendant C&L and/or Defendant Sales was with the intent to defraud, so that pursuant to 49 C.F.R. §578.6(f)(2), Plaintiffs Skinner are entitled to three times their actual damages or $13,676, whichever is greater, against each of the Defendants, plus their attorneys' fees and costs.

**WHEREFORE**, Plaintiffs Skinner pray for judgment on Count I of this Complaint for a separate award against Defendants C&L and Sales for in excess of $90,000 in statutory damages, for reasonable attorneys' fees, for their costs incurred and for any other relief to which they may be entitled.

## COUNT II – DEFENDANT AR CAR TITLE WORKS – NEGLIGENCE

67.     Plaintiffs Skinner restate and reallege paragraphs 1 – 66 above as though each were fully set forth herein.

---

[3] The federal odometer statutes were formerly numbered from Title 15 U.S.C. §§ 1981 through 1991; they were "codified" - re-enacted with changes in wording to conform to new standardized style requirements but expressly without any change in the substance of the laws - in 1994, and now are found at Title 49 U.S.C. §§ 32701 through 32711.

68.     Defendant AR Car Title Works touts itself as having a "small team of Arkansas DMV experts helping individuals and car dealerships with all their car title needs". It further touts 15 years of professional experience.

69.     Pursuant to its professional experience and its Arkansas DMV experts, Defendant AR Car Title Works knew, or should have known, that the vehicles for which it assists car dealership clients in obtaining Arkansas car titles would offer those same vehicles for sale in interstate commerce, including possible sales to dealers or consumers in Missouri. In other words, it was foreseeable to Defendant AR Car Title Works that the representations on titles obtained for Defendant C&L would be passed along to downstream consumers like Plaintiffs Skinner.

70.     At all relevant times, Defendant AR Car Title Works was acting as an agent for Defendant C&L pursuant to the Power of Attorney referenced above in obtaining a repossession title for the Dodge Truck on behalf of Defendant C&L. As such, it endorsed and warranted the accuracy of its submissions on behalf of Defendant C&L. Defendant AR Car Title Works therefore assumed a duty of reasonable care to prevent foreseeable harm to consumers like Plaintiffs Skinner, who would rely upon mileage representations made to the State of Arkansas and when it knew such mileage representations would be repeated to consumers like Plaintiffs Skinner.

71.     Based on its own submissions on behalf of Defendant C&L, especially including the March 20, 2024, Experian Auto Check Report referenced in ¶ 50 b) above, Defendant AR Car Title Works knew, or should have known that the Dodge Truck had allegedly only traveled 128 miles in nearly 11 years. The Experian Auto Check report

indicated the Dodge Truck's last reported odometer reading was 99,769 miles on September 7, 2013, whereas Defendant AR Car Title Works knew that its client, Defendant C&L was claiming the Dodge Truck's actual odometer reading was 99,897 miles on March 20, 2024.

72.    According to the Power of Attorney wherein Defendant C&L appointed Defendant AR Car Title Works as its agent for applying for a motor vehicle transaction with the State of Arkansas, Defendant AR Car Title Works knew "[p]roviding a false statement may result in fines and/or imprisonment"' for violations of federal odometer law.

73.    The obligations referred to in the Power of Attorney form were designed to protect downstream consumers such as Plaintiffs Skinner from false statements ending up on titles issued by the State of Arkansas, like what occurred in this case.

74.    When acting in its capacity as an agent on behalf of Defendant C&L, Defendant AR Car Title Works owed a duty of ordinary care to downstream consumers purchasing cars in other states, including Plaintiffs Skinner in Missouri, to ensure that its submissions to the State of Arkansas for purposes of obtaining a title for Defendant C&L were true and accurate.

75.    Defendant AR Car Title Works breached said duty and was negligent in the following manners:

    a)    In failing to investigate, question or refuse to submit Defendant C&L's representations that the Dodge Truck had only traveled 128 miles in nearly 11 years, when applying to the State of Arkansas for a

repossession title to the Dodge Truck, when it knew, or in the exercise of ordinary care, should have known that Defendant C&L's mileage representations were, at the very least, suspicious; and

b) In failing to instruct or train its agents and/or employees to catch or question title and mileage discrepancies like those referenced herein to protect downstream consumers like Plaintiffs Skinner.

76.     Defendant AR Car Title Works' negligence caused or contributed to cause Plaintiffs Skinners' damages as alleged above.

77.     Defendant AR Car Title Works' conduct was done with reckless disregard for the rights of Plaintiffs Skinner and others, thereby entitling Plaintiffs Skinner to an additional assessment of punitive damages in an amount sufficient to punish Defendant AR Car Title Works and to deter others from like conduct.

**WHEREFORE**, Plaintiffs Skinner pray judgement on Count II of this Complaint for their actual damages, for an additional assessment of punitive damages, for their costs incurred and for any other relief to which they may be entitled.

## COUNT III – DEFENDANT C&L AND DEFENDANT AR CAR TITLE WORKS – COMMON LAW FRAUD

78.     Plaintiffs Skinner restate and reallege paragraphs 1 – 77 above as though each were fully set forth herein.

79.     Defendants C&L and AR Car Title Works knew, or should have known, that the representations about the Dodge Truck's mileage would be repeated and communicated to consumers in interstate commerce, like Plaintiffs Skinner in Missouri.

80.     Defendant AR Car Title Works conspired with Defendant C&L by endorsing and warranting Defendant C&L's misrepresentations about the Dodge Truck's mileage and engaging in a common enterprise to defraud dealers and consumers through interstate commerce, which necessarily includes consumers in Missouri, like Plaintiffs Skinner.

81.     Alternatively, Defendant AR Car Title Works knowingly participated in, profited, benefited and retained benefits from Defendants C&L's fraudulent acts and is therefore a fraud-feasor. *Payne v. Jenkins*, 593 S.W. 2d 519 (Mo. banc 1980).

82.     Defendants C&L's representations about the Dodge Truck's mileage and Defendant AR Car Title Works' endorsement and warranting of the same to State of Arkansas, was done with the intent that dealers and consumers in interstate commerce, like Defendant Xtreme and Plaintiffs Skinners would rely upon said representations in making purchasing decisions about the Dodge Truck.

83.     Plaintiffs Skinner had a right to rely on and reasonably relied on the representations and fraudulent mileage statements regarding the Dodge Truck based, in part, on the documents submitted by Defendant AR Car Title Works to the State of Arkansas on behalf of Defendant C&L.

84.     Said representations were false and fraudulent in that the Dodge Truck's actual mileage is over 200,000 miles, not the nearly 100,000 miles reported to the State of Arkansas by Defendant C&L and endorsed and warranted by Defendant AR Car Title Works.

24

85. Said false and fraudulent representations caused or contributed to cause Plaintiffs Skinner's damages as alleged herein.

86. The conduct of Defendants C&L and AR Car Title Works was willful, wanton and done in reckless disregard to the rights and safety of Plaintiffs Skinner, thereby entitling them to an additional assessment of punitive damages in an amount sufficient to punish Defendants C&L and AR Car Title Works and to deter others from like conduct.

**WHEREFORE**, Plaintiffs Skinner pray for judgment on Count III of this Complaint against Defendants C&L and AR Car Title Works, jointly and severally, for their actual damages, for an additional assessment of punitive damages, for their costs incurred and for any other relief to which they may be entitled.

## COUNT IV – DEFENDANTS XTREME, MAKAYLA FRYE, JOHN FRYE AND MATTHEW FRYE – VIOLATIONS OF FEDERAL ODOMETER LAW

87. Plaintiffs Skinner restate and reallege paragraphs 1 – 86 above as though each were fully set forth herein.

88. Defendants Makayla Frye, John Frye and Matthew Frye (collectively "Defendants Frye"), on behalf of Defendant Xtreme, failed to take any affirmative steps to verify the Dodge Truck's purported mileage and discover odometer defects.

89. Defendant Xtreme (through Defendants Frye) is a sophisticated and experienced motor vehicle dealership that regularly relies on reports and other information that detail the mileage history of vehicles it sells.

90.    Defendants Frye and Xtreme ignored, were grossly negligent, acted with reckless disregard for the truth and/or "closed their eyes" to some or all of the information in their possession regarding the Dodge Truck. For example, the last entry of the CARFAX report indicated that the Dodge Truck's reported mileage was 99,769 miles as of September 18, 2013. When compared with the stated mileage of 99,897 miles on the Arkansas Title when Defendant C&L allegedly repossessed the truck on March 20, 2024, this indicates the Dodge Truck was only driven 128 miles in nearly 11 years, making the stated mileage on the Arkansas Title highly questionable, if not virtually impossible. Exhibits F and G.

91.    Based on this information alone, Defendants Frye and Xtreme knew or should have known that the Dodge Truck had substantially more miles than was disclosed and certified upon transfer of the truck to Plaintiffs Skinner. Defendants Frye knowingly participated in, profited, benefited and retained benefits from Defendant Xtreme's fraudulent acts, therefore are fraud-feasors.

92.    The conduct of Defendants Frye, and in turn, Xtreme, in making and participating in false mileage statements concerning the Dodge Truck, constituted violations of 49 U.S.C. §§32703 and 32705 and regulations for the enforcement of the federal odometer statutes 49 C.F.R. §580.1 et. seq.

93.    As a proximate result of these violations of law, Plaintiffs Skinner suffered actual damages in excess of $30,000 as alleged above.

94.    The conduct of Defendants Frye and Xtreme was with the intent to defraud, so that pursuant to 49 C.F.R. §578.6 (f)(2), Plaintiffs Skinner are entitled to three times

26

their actual damages or $13,676, whichever is greater, against each of the Defendants Frye and Defendant Xtreme, plus attorneys' fees and costs.

**WHEREFORE**, Plaintiffs Skinner pray for judgment on Count III of this Complaint for a separate award against each of Defendants Frye and Xtreme in excess of $90,000 in statutory damages, for reasonable attorneys' fees, for their costs incurred and for any other relief to which they may be entitled.

## COUNT V – DEFENDANTS XTREME, MAKAYLA FRYE, JOHN FRYE AND MATTHEW FRYE – COMMON LAW FRAUD

95.     Plaintiffs Skinner restate and reallege paragraphs 1 – 94 above as though each were fully set forth herein.

96.     Defendants Frye and Xtreme represented on their Facebook Marketplace page that the Dodge Truck was a "one owner"; had a "clean title", "no mechanical defects" and "105,245 miles" to the public in general, including Plaintiffs Skinner. In addition, Defendant John Frye specifically represented "Please read ad…Everything is listed in ad…Clean title. No issues" as referenced in paragraph 15 above.

97.     Defendants Frye and Xtreme intended for Plaintiffs Skinner to rely upon their representations described above.

98.     Plaintiffs had the right to rely on and reasonably relied on Defendants Frye's and Xtreme's representations.

99.     Said representations were false and fraudulent in that the Dodge Truck was not a one owner vehicle, did not have a clean title, did not have only 105,245 miles at the time of transfer to Plaintiffs Skinner and had at least the following mechanical defects at

the time of Plaintiffs Skinner's purchase: 1) defective front axle u-joint; 2) a heater core that had been bypassed because it is likely leaking or plugged; 3) engine front cover leaking oil; 4) rear passenger door that will not lock/unlock; and 5) an inoperable backup camera.

100.    Said false and fraudulent representations caused or contributed cause Plaintiffs Skinners' damages as alleged herein.

101.    The conduct of Defendants Frye and Xtreme was willful, wanton and done in reckless disregard for the rights and safety of Plaintiffs Skinner, thereby entitling them to an additional assessment of punitive damages in amount sufficient to punish Defendants Frye and Xtreme and to deter others from like conduct.

**WHEREFORE**, Plaintiffs Skinner pray for judgment on Count IV of this Complaint against Defendants Frye and Xtreme, jointly and severally, for their actual damages, for an additional assessment of punitive damages, for their costs incurred and for any other relief to which they may be entitled.

## COUNT VI – DEFENDANTS XTREME, MAKAYLA FRYE, JOHN FRYE AND MATTHEW FRYE – VIOLATIONS OF THE MISSOURI MERCHANDISING PRACTICES ACT

102.    Plaintiffs Skinner restate and reallege paragraphs 1 – 101 above as though each were fully set forth herein.

103.    Defendants Frye's and Xtreme's conduct alleged above constituted multiple violations of the Missouri Merchandising Practices Act ("MMPA"), RSMo. §407.020 et seq., and the regulations for implementation of the MMPA at 15 CSR §§60-7.010 et seq., 60-8.010 et seq. and 60-9.010 et seq. before, during and after the sale of the Dodge Truck.

104.    As a direct and proximate result of Defendants Frye's and Xtreme's representations, omissions and unfair practices, as alleged above, Plaintiffs Skinner have suffered ascertainable losses and damages as set forth above.

105.    Pursuant to RSMo. §407.025, Plaintiffs Skinner are entitled to recover their actual damages, punitive damages, reasonable attorneys' fees, costs and any equitable relief.

**WHEREFORE**, Plaintiffs Skinner pray for judgment on Count V of this Complaint against Defendants Frye and Xtreme, jointly and severally, for their actual damages, for an additional assessment of punitive damages, for their attorneys' fees, costs, equitable relief and for any other relief to which they may be entitled.

## COUNT VII – DEFENDANTS XTREME, MAKAYLA FRYE, JOHN FRYE AND MATTHEW FRYE – NEGLIGENCE

106.    Plaintiffs Skinner restate and reallege paragraphs 1 – 105 above as though each were fully set forth herein.

107.    Defendants Frye and Xtreme owed a duty of ordinary care to Plaintiffs Skinner to protect Plaintiffs Skinner from unreasonable risks of harm related to their purchase of the Dodge Truck.

108.    Defendants Frye and Xtreme breached that duty and were negligent in one or more of the following manners:

a)  In failing to properly investigate Defendant C&L's representations and documentation about the Dodge Truck's mileage and the alleged number of prior owners;

b) In failing to properly inspect the Dodge Truck to discover its true mechanical condition;

c) In failing to failing to retain qualified personnel to conduct vehicle inspections for the detection of mechanical or other issues or to train personnel to conduct such inspections;

d) In failing to properly train someone to conduct proper inspections of the vehicles they offer for sale; and

e) In failing to correct Defendant Xtreme's, Defendant Makayla Frye's and Defendant John Frye's misrepresentations to Plaintiffs Skinner, when they each knew, or should have known such misrepresentations were made.

109.   As a result of Defendants Frye's and Xtreme's negligence, Plaintiffs Skinner were damaged as alleged above.

110.   The conduct of Defendants Frye was willful, wanton and done in reckless disregard to the safety of Plaintiffs Skinner, thereby entitling them to an additional assessment of punitive damages in an amount sufficient to punish Defendants Frye and Xtreme and to deter others from like conduct.

**WHEREFORE**, Plaintiffs Skinner pray for judgment on Count VI of this Complaint against Defendants Frye and Xtreme, jointly and severally, for their actual damages, for an additional assessment of punitive damages, for their costs incurred and for any other relief to which they may be entitled.

## COUNT VIII – DEFENDANTS C&L AND XTREME – BREACHES OF IMPLIED WARRANTY OF TITLE

111.    Plaintiffs Skinner restate and reallege paragraphs 1 – 110 above as though each were fully set forth herein.

112.    This claim is brought pursuant to Missouri's Uniform Commercial Code ("UCC") §400.2-312 RSMo.

113.    Defendants C&L and Xtreme are merchants as defined by §400.2-104 RSMo.

114.    Defendants C&L and Xtreme are also merchants in goods of the kind at issue in this case, *i.e.*, motor vehicles.

115.    Defendants C&L and Xtreme breached §400.2-312(1)(a) and (b) RSMo. in that their respective transfers of title are encumbered by incorrect statements of the Dodge Truck's actual mileage of which Plaintiffs Skinner had no knowledge.

116.    Plaintiffs Skinner relied on the representations, superior knowledge, skill and judgment of Defendants C&L and Xtreme in purchasing the Dodge Truck.

117.    As a direct and proximate result of the breaches of this warranty implied by law, Plaintiffs Skinner suffered the damages as alleged herein.

**WHEREFORE**, Plaintiffs Skinner pray for judgment on Count VII of this Complaint, jointly and severally, against Defendants C&L and Xtreme for their actual damages, for their costs incurred and for any other relief to which they are entitled.

31

## COUNT IX – DEFENDANTS C&L AND XTREME – BREACHES OF IMPLIED WARRANTY OF MERCHANTABILITY BY DESCRIPTION

118. Plaintiffs Skinner restate and reallege paragraphs 1 – 117 above as though each were fully set forth herein.

119. This claim is brought pursuant to Missouri's UCC § 400.2-314(2)(a).

120. The Dodge Truck, when sold by Defendants C&L and Xtreme, would not have passed without objection in the trade under its description if its actual mileage would have been disclosed as required by federal and state law.

121. As a direct and proximate result of the breaches of this implied warranty, Plaintiffs Skinner suffered damages as alleged herein.

**WHEREFORE**, Plaintiffs Skinner pray for judgment on Count VIII of this Complaint, jointly and severally, against Defendants C&L and Xtreme for their actual damages, for their costs incurred and for any other relief to which they are entitled.

## COUNT X – DEFENDANTS C&L AND XTREME – BREACHES OF IMPLIED WARRANTY OF MERCHANTABILITY FOR ORDINARY PURPOSES

122. Plaintiffs Skinner restate and reallege paragraphs 1 – 121 as though fully set forth herein.

123. This claim is brought pursuant to Missouri's UCC § 400.2-314(2)(c).

124. The Dodge Truck, when sold by Defendants C&L and Xtreme, was not fit for the ordinary purposes for which such goods, with titles, containing the actual mileage are sold.

125. As a direct and proximate result of the breaches of this implied warranty, Plaintiffs Skinner suffered damages as alleged herein.

**WHEREFORE**, Plaintiffs Skinner pray for judgment on Count IX of this Complaint, jointly and severally, against Defendants C&L and Xtreme for their actual damages, for their costs incurred and for any other relief to which they are entitled.

## COUNT XI – DEFENDANTS C&L AND XTREME – BREACHES OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE

126.    Plaintiffs Skinner restate and reallege paragraphs 1 – 125 above as though each were fully set forth herein.

127.    This claim is brought pursuant to Missouri's UCC § 400.2-315.

128.    When the Dodge Truck was sold by Defendants C&L and Xtreme, they had reason to know of the particular purpose for which it was required, which was legal and not illegal transfer, then registration and use on the highways, and they had reason to know that the buyers, ultimately Plaintiffs, were relying on their skill, superior knowledge or judgment to furnish suitable goods.

129.    As a direct and proximate result of the breaches of this implied warranty, Plaintiffs Skinner suffered damages as alleged herein.

**WHEREFORE**, Plaintiffs Skinner pray for judgment on Count X of this Complaint, jointly and severally, against Defendants C&L and Xtreme for their actual damages, for their costs incurred and for any other relief to which they are entitled.

## COUNT XII – DEFENDANTS C&L AND XTREME – VIOLATIONS OF THE FEDERAL MAGNUSON-MOSS CONSUMER WARRANTY ACT

130.    Plaintiffs Skinner restate and reallege paragraphs 1 – 129 above as though each were fully set forth herein.

131.    These claims are brought pursuant to Title 15 USC § 2310(d).

33

132.    The Dodge Truck is a "consumer product" within the meaning of Title 15 USC § 2301(1).

133.    The violations by Defendants C&L and Xtreme of implied warranties as alleged in the preceding four Counts give Plaintiffs Skinner claims against Defendants C&L and Xtreme under Title 15 USC § 2310(d) for actual damages, attorneys' fees and costs.

134.    As a direct and proximate result of the breaches of the Missouri implied warranties as alleged, Plaintiffs Skinner suffered damages as alleged herein.

135.    Defendants C&L's and Xtreme's breaches were willful, wanton and malicious, done with evil motive and reckless disregard for the rights and safety of Plaintiffs Skinner and others, thereby entitling Plaintiffs Skinner to an additional assessment of punitive damages in an amount sufficient to punish and to deter Defendants C&L and/or Xtreme and others from like conduct.

**WHEREFORE**, Plaintiffs Skinner pray for judgment on Count XI of this Complaint, jointly and severally, against Defendants C&L and Xtreme for their actual damages, attorneys' fees, costs, and for any other relief to which they are entitled.

## COUNT XIII – DEFENDANTS C&L AND XTREME – BREACHES OF EXPRESS WARRANTY

136.    Plaintiffs Skinner restate and reallege paragraphs 1 – 135 above as though each were fully set forth herein.

137.    This claim is brought pursuant to Missouri's UCC § 400.2-313.

34

138. The Dodge Truck, when sold by Defendants C&L and Xtreme, did not in fact conform to the affirmations of fact as alleged that were made by Defendants C&L and Xtreme that became part of the basis of the bargains in their sales.

139. As a direct and proximate result of the breaches of these express warranties, Plaintiffs Skinner suffered the damages as alleged herein.

**WHEREFORE**, Plaintiffs Skinner pray for judgment on Count XII of this Complaint jointly and severally against Defendants C&L and Xtreme for their actual damages, costs, and for any other relief to which they are entitled.

**ALESHIRE ROBB & RAPP**

By */s/ Gregory W. Aleshire*
Gregory W. Aleshire MO #38691
William R. Robb MO #43322
Kevin J. Rapp MO #57974
2847 Ingram Mill Road, A-102
Springfield, MO 65804
417.869.3737 PHONE
417.869.5678 FAX
*info@aleshirerobb.com*
**ATTORNEYS FOR PLAINTIFFS**